Jerry ATCOVITZ and Roslyn Atcovitz, H/W, Appellants,

v.

GULPH MILLS TENNIS CLUB, INC., JKST, Inc. and Gulp Mills/JKST Tennis Club, Inc. Lafayette Ambulance Rescue Squad 1, Appellee.

Superior Court of Pennsylvania.

Argued Sept. 12, 2000.

Filed Jan. 16, 2001.

J. Craig Currie, Philadelphia, for appellants.

Lucien R. Tharaud, Philadelphia, for Gulph Mills Tennis Club, appellee.

Before DEL SOLE, HUDOCK and STEVENS, JJ.

DEL SOLE, J.

¶ 1 In 1996, Appellant Jerry · Atcovitz suffered a heart attack while playing tennis at Appellee's facility. Appellant Atcovitz and his wife[1] filed a negligence suit against Appellee, claiming Appellant's injuries could have been mitigated if Appellee's facility had had available a medical device called an automated external defibrillator ("AED"). Appellee asserted a defense to this claim that at the time of Appellant's injury, employees at its facility would not have been permitted, legally, to employ an AED. Appellants moved for partial summary judgment in an attempt to bar Appellee from asserting this defense. This motion was denied. However, immediately prior to trial, Appellants orally moved for reconsideration of the motion. At that time, Appellee cross-moved for summary judgment. The trial court granted Appellee's motion and dismissed the case[2]. This appeal follows.

¶ 2 Appellants raise only one issue for our review:

Where neither an enabling statute nor code regulations promulgated pursuant thereto purport in language or structure to regulate the administration of first aid by laypersons, did the Trial Court err in interpreting 28 Pa.Code § 1003.22 as restricting the use of automatic external defibrillators to trained members of the emergency services system and prohibiting its use to bystanders, i.e., those persons most likely to be able to use the device quickly enough to achieve its life saving benefits?

Appellants' Brief at 3.

¶ 3 On an appeal from a grant of summary judgment, a reviewing court must examine the record in a light most favorable to the nonmoving party, accepting as true all well-pleaded facts and giving that party benefit of all reasonable inferences which can be drawn from those facts. *Hoffman v. Brandywine Hospital,* 443 Pa.Super. 245, 661 A.2d 397 (1995). The Superior Court will reverse a grant of summary judgment only when the trial court has committed an error of law or abused its discretion. *Butterfield v. Giuntoli,* 448 Pa.Super. 1, 670 A.2d 646 (1995).

¶ 4 The trial court based its grant of summary judgment on an examination and interpretation of statutes and code regulations and concluded that at the time of Appellant's injury, employees at Appellee's facility were legally prohibited from using an AED, and thus, Appellee could not be liable for failure to possess the device. In its order granting summary judgment, the trial court specifically relied on 28 Pa.Code § 1003.22. In its related opinion, the trial court relied on 35 Pa. C.S.A. §§ 6921–38, 28 Pa.Code § 1003.4 and 1003.28. Our review of all of these sections belies the trial court's conclusion. As explained below, these statutes and regulations relate to the administration of organized emergency services and contain no limitation on first aid efforts performed by lay persons. There is simply no sup-

---

1. References to Appellant singularly refer to Mr. Atcovitz.

2. While the issue is not before us, we question the wisdom of the trial court's consideration of a motion for summary judgment on the day of trial. We note that Pennsylvania Rule of Civil Procedure 1035.2 provides that a motion for summary judgment may occur "[a]fter the relevant pleadings are closed, but within such time **as not to unreasonably delay trial** ..." (emphasis added).

port for the trial court's conclusion in these statutes and regulations.

¶ 5 The statutes relied upon by Appellee and the trial court are contained in the Emergency Medical Services Act, 35 Pa. C.S.A. §§ 6921–38, ("the Act"). The Pennsylvania legislature, in enacting the Act, specified its intent was "to establish and maintain an effective and efficient emergency medical services system which is accessible on a uniform basis to all Pennsylvania residents and to visitors to this Commonwealth." 35 Pa.C.S.A. § 6922(b)(1). The legislature further defined "emergency medical services system" to mean "the arrangement of personnel, facilities and equipment for the effective and coordinated delivery of emergency medical service required in prevention and management of incidents which occur either as a result of a medical emergency or of an accident, natural disaster or similar situation." 35 Pa.C.S.A. § 6923. Clearly, the Act was designed for and aimed at the administration of emergency services by trained and licensed professionals. The Act contains no provision addressing emergency actions by lay persons, nor would such a provision be appropriate within the Act. Accordingly, we afford the Act very little relevance in our analysis of the issue before us.

¶ 6 Additionally, the trial court and Appellee cite to regulations in the section titled "Administrative and Supervisory EMS Personnel" of the Health and Safety title. Our review of the regulations contained under this section reveals no prohibition or limitation on first aid efforts performed by lay persons. Rather, the section's applicability, not surprisingly, is limited to EMS personnel. Specifically, the trial court relied on 28 Pa.Code §§ 1003.4, 1003.22, and 1003.28. These regulations deal with, respectively, the roles, responsibilities and qualifications of a medical command physician, the roles, responsibilities and certification of first responders, and the procedure by which medical command authorization is granted. Without fully exploring the meaning of each of these regulations, we are able to state that none have any relevance to the issue before us relating to use of an AED by lay persons.

¶ 7 We finally address the relevance of a statute cited by both parties to advance their argument, 42 Pa.C.S.A. § 8331.2, "Good Samaritan civil immunity for use of automated external defibrillator." Appellee claims that the Good Samaritan statute, enacted in 1998, denotes a change in legislative acceptance of AED use. Further, Appellee argues that the statute's training and certification requirements evidence a grant of immunity limited solely to those trained in AED use. While the statute does contain training requirements for use of an AED, there is also an important and relevant exception, which provides,

> [a]ny individual who lacks the training set forth in subsection (c) but who has access to an AED and in good faith uses an AED in an emergency as an ordinary, reasonably prudent individual would do under the same or similar circumstances shall receive immunity from civil damages as set forth in subsection (a).

42 Pa.C.S.A. § 8331.2(e).

¶ 8 Thus, as the exception makes clear, the legislature anticipated the use of AEDs by lay persons and accorded these persons immunity. We also note that the passage of this statute, without a corresponding amendment to the above-described Emergency Medical Services Act, evidences the legislature did not consider that the Act restricted the use of AEDs to trained professionals. The Good Samaritan statute is a further indication that the Act does not prohibit the use of AEDs by lay persons.

¶ 9 Thus, although we make no finding on the ultimate merits of Appellants' claim, we find that the trial court erred as a matter of law in granting Appellee's motion for summary judgment on the basis of the statutes and regulations cited.

¶ 10 Order granting Appellee's motion for summary judgment reversed. Case remanded. Jurisdiction relinquished.